# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
        **Plaintiff,**

      v.                                  Case No. 13-CR-133

LEE A. FRANCK,
        **Defendant.**

## RECOMMENDATION THAT THE DEFENDANT'S MOTION TO SUPPRESS BE DENIED

### I. PROCEDURAL HISTORY

On July 23, 2013, the grand jury in this district returned a single count indictment charging Lee A. Franck ("Franck") with possessing a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of Title 18, United States Code, Sections 922(g)(9) and 924(a)(2). (Docket No. 1.) On August 27, 2013, Franck filed a motion to suppress, alleging that the search warrant that led to the discovery of the firearm that forms the basis for the indictment, was not supported by probable cause. (Docket No. 8.) The government requested an evidentiary hearing, (Docket No. 11), and that briefing be stayed pending the completion of that hearing, (Docket No. 10). The court held a status conference on September 10, 2013 to discuss this motion and the need for an evidentiary hearing. (Docket No. 13.) The court denied the government's request for an evidentiary hearing and ordered the government to respond to the motion. The government did so on September 17, 2013. (Docket No. 14.) The defendant replied on September 23, 2013. (Docket No. 15.) The pleadings on this motion are closed and this matter is ready for resolution.

## II. FACTS

On June 22, 2013, Florence County Deputy Sheriff Michael Short sought and obtained a warrant to search the single family home in Aurora, Wisconsin where Franck lived with his parents. (Docket No. 9-1.) According to the affidavit submitted in support of the search warrant, deputies responded to that residence earlier that day in response to a report of a man armed with a revolver who was threatening another occupant of the residence. (Docket No. 9-1 at 5.) "Subsequent investigation of the complaint revealed that the original suspect did not possess a firearm, but rather that some threats had been made." (Docket No. 9-1 at 5.) Franck, who was the person who had called deputies to the residence, was arrested for disorderly conduct. (Docket No. 9-1 at 5.)

Franck's mother reported to a deputy that Franck did have a firearm in his room. (Docket No. 9-1 at 6.) A deputy at the residence observed an empty handgun holster but did not locate the firearm. (Docket No. 9-1 at 6.) The affidavit continues:

> A Criminal History check of Lee Franck showed that he is disqualified from possessing firearms. Lee has several convictions on his criminal history for Bail Jumping, Battery, Criminal Trespass, Criminal Damage to Property and Domestic Related Abuse. A check of the Circuit Court Access Program (CCAP) web page showed that there has previously been a Domestic Abuse restraining order issued against Lee Franck on which there was a firearms restriction.

(Docket No. 9-1 at 6.)

Additionally, Franck's family members reported that Franck

> has been taking prescription medications, specifically Tramadol, that may or may not have been prescribed to him. The suspect's mother stated that at approximately 10 am today, Lee took 2 Oxycodone 10 mg tablets and 2 Buspirone tablets which are prescribed to her. Chief Deputy Gribble advised that he had located a single bottle of Tramadol at the residence, however there were other tablets in the bottle which did not match the prescription label.

(Docket No. 9-1 at 6.)

2

### III. DEFENDANT'S MOTION TO SUPPRESS

Franck contends that the evidence seized pursuant to the warrant must be suppressed because "the affidavit in support of the warrant makes both a mistake of fact and a mistake of law, and therefore fails to provide probable cause for any search." (Docket No. 9 at 4.) The search warrant seeks to seize any and all firearms, prescription medications, and any other illicit drugs or narcotics on the basis that these items "may constitute evidence of, or may have been used in, the commission of a crime, To-wit; Possession of Firearm by Disqualified Person, contrary to Wisconsin Statute 941.29(1)(g); Possession of Controlled Substance, contrary to Wisconsin Statute 961.41." (Docket No. 9-1.)

Franck notes that at the time of the warrant, there was no injunction in place barring him from possessing a firearm. An injunction was issued on April 30, 2008, see Marathon County Circuit Court case no. 2008CV501, available at http://wcca.wicourts.gov, but such an injunction would last only four years, see Wis. Stat. § 813.125(4)(c), and thus necessarily would have expired by the time of the warrant. But more importantly, anyone who reviewed the record on the Wisconsin Court System's public Circuit Court Access Program ("CCAP"), as the affiant states he did, would see on the very first screen the following message with respect to the case:

> The court issued an injunction against the respondent directing the respondent to not engage in certain conduct. At some time after the injunction was issued, the case was dismissed for reasons that can be found in the court file. There are no current orders against the respondent at this time as a result of this case.

(Docket No. 9-2.) The injunction had actually been lifted less than eight months after it was issued. Thus, because there was no injunction in effect, in Franck's view, the warrant failed to establish probable cause to believe that Franck could not lawfully possess a firearm.

Moreover, Franck contends that the affidavit failed to establish probable cause to search for drugs because the mere possibility that the prescription drugs his family members reported him taking might not have been prescribed for him was legally insufficient to constitute probable cause to believe there was any contraband or evidence of any crime inside the house. And with respect to his mother's report that Franck "took" certain drugs prescribed for her, Franck contends that "took" is too ambiguous to support a finding of probable cause. This might mean that he ingested the drugs or merely moved them to another location. (Docket No. 9 at 11.) If he ingested the drugs, evidence of this act likely would not be found in the residence. (Docket No. 9 at 11.)

## IV. ANALYSIS

### A. Probable Cause

The government concedes that the affidavit contained false information when it referred to the injunction against Franck but contends that the affiant did not intentionally or recklessly disregard the truth. (Docket No. 14 at 2-4.) In the view of the government, the reference to the injunction was unnecessary to establishing probable cause. (Docket No. 14 at 4-5.)

The court disagrees with the government, but not with respect to the necessity of the reference to the injunction. Rather, the court disagrees with the government that the reference to the injunction was false. As written, the statement in the affidavit was objectively true. CCAP does reveal that a restraining order was issued against Franck and this injunction included a firearms restriction. The statement is in the past tense and does not, by itself, state that such an injunction remains in place.

But even statements that are objectively true can nonetheless appear to offend the rule set forth in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), if they are plainly likely to mislead the judicial

4

officer reviewing the warrant. See United States v. Williams, 718 F.3d 644, 647 (7th Cir. 2013). Here, the inclusion of the reference to the injunction, combined with the reference to the Wisconsin statute making it a crime to for persons subject to an injunction to possess firearms, made it highly likely that a judicial officer reviewing the affidavit would be misled into believing that such an injunction remained in effect. In fact, by all appearances, the affiant actually believed that an injunction was in place and for this reason Franck could not lawfully possess a firearm. But the court must decide if this statement was made deliberately or in reckless disregard for the truth only if probable cause would not have existed absent the misleading statement. Id.

Franck does not contend that there was not probable cause to believe that he possessed a firearm. And in any event, the court finds the reports of family members and the deputy's corroborative observation of an empty holster readily established probable cause for such a belief. Rather, Franck challenges only whether there was probable cause to believe that his possession was unlawful. Thus, the court looks to the affidavit to see if it otherwise establishes probable cause to believe that Franck could not lawfully possess a firearm.

Probable cause is a fluid concept, United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990), determined by the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search…will uncover evidence of a crime." McNeese, 901 F.2d at 592; Gates, 462 U.S. at 238 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995). "Judges may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to

5

issue a warrant." United States v. Prideaux-Wentz, 543 F.3d 954, 961 (7th Cir. 2008) (internal quotation marks omitted). "Probable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 244 n.13.

Although the affidavit recites Franck's criminal record, at no point is it alleged that Franck had ever been convicted of a felony so that he would be barred from possessing a firearm under Wis. Stat. § 941.29(1)(a), (b) or 18 U.S.C. § 922(g)(1). However, the affidavit states that Franck has been convicted of "Domestic Related Abuse." Wisconsin law does not prohibit persons convicted of misdemeanor crimes of domestic violence from possessing firearms but, as the indictment in this matter makes clear, federal law does, 18 U.S.C. § 922(d)(9). The affidavit provides no facts as to the nature of Franck's conviction for "Domestic Related Abuse," and this title does not refer to any particular Wisconsin statute. There is no crime of "domestic abuse" per se in Wisconsin but rather the state's generally applicable criminal statutes, such as battery, Wis. Stat. § 940.19, or disorderly conduct, Wis. Stat. § 947.01, are applied in cases of domestic abuse. Depending upon the relationship between the victim and the perpetrator, such offenses might constitute a misdemeanor crime of domestic violence under federal law, see 18 U.S.C. § 921(a)(33)(A). United States v. Bornfleth, 2010 U.S. Dist. LEXIS 145490 (E.D. Wis. Nov. 10, 2010); United States v. Marciniak, 2010 U.S. Dist. LEXIS 140682, 17-19 (E.D. Wis. Nov. 10, 2010).

In the view of the court, the reference to a conviction for "domestic related abuse" is sufficient to establish probable cause to believe that Franck was convicted of an offense that barred him from possessing a firearm under federal law. However, this warrant was issued by a Wisconsin court commissioner, requiring the court to address the question of whether a court commissioner is permitted to issue a warrant to search for evidence of a federal crime.

6

Under Wisconsin law, a court commissioner is authorized to issue search warrants. Wis. Stat. § 757.69(1)(b); State v. Williams, 2012 WI 59, 341 Wis. 2d 191, 814 N.W.2d 460. "A search warrant may authorize the seizure of … [a]nything other than documents which may constitute evidence of any crime." Wis. Stat. § 968.13(1). In statutorily authorizing the issuance of a search warrant for "any crime," this would seem to plainly encompass federal crimes. The conclusion that a Wisconsin court commissioner may issue a warrant authorizing a state law enforcement officer to search for evidence of a federal crime is bolstered by noting that a Wisconsin law enforcement officer is generally authorized to investigate and arrest individuals for federal criminal offenses. See, e.g., Ker v. California, 374 U.S. 23, 37 (1963); Wis. Stat. § 968.07(1)(d). However, with respect to search warrants, although the Federal Rules of Criminal Procedure authorize state court judges to issue federal search warrants under certain circumstances, the Rule authorizes such action only when the request is made by a federal law enforcement officer. Fed. R. Civ. P. 41(b). Thus, when a state law enforcement officer is investigating a federal crime, his or her only option is to seek a warrant from a state court judge. Although the affidavit did not explicitly refer to an alleged violation of 18 U.S.C. § 922(d)(9), the court has not identified any authority to suggest that such a reference to the specific statute allegedly violated is necessary in a Wisconsin search warrant. And in any event, the court's concern at this point is not whether each technical formality may have been complied with but rather whether a neutral and detached judicial officer was presented with facts sufficient to establish probable cause to search the residence. See Hudson v. Michigan, 547 U.S. 586, 603 (2006).

Based upon the foregoing, the court concludes that there was probable cause to believe that Franck possessed a firearm and his possession of that firearm was a violation of federal law.

The deputy sheriff was authorized to investigate this offense and the court commissioner authorized to issue a warrant permitting a search of the residence and the seizure of any firearm discovered. Therefore, excluding the misleading references to the injunction and Wis. Stat. § 941.29(1)(g), probable cause nonetheless existed to search the residence for firearms.

### B. Inevitable Discovery

Additionally or alternatively, the court concludes that the affidavit established probable cause to search the residence for evidence of the unlawful possession of controlled substances, and by virtue of this search, the firearms would have been inevitably discovered. See United States v. Pelletier, 700 F.3d 1109, 1116 (7th Cir. 2012) (citing Nix v. Williams, 467 U.S. 431 (1984)). The principle of inevitable discovery is the result of a balancing of interests at play with respect to the Fourth Amendment. United States v. Jones, 72 F.3d 1324, 1330 (7th Cir. 1995) (citing Nix, 467 U.S. at 443). While the exclusionary rule prevents police from being rewarded for violations of the Fourth Amendment, the doctrine of inevitable discovery prevents the police from being placed in a worse position they would have been in had no violation occurred. United States v. Brown, 328 F.3d 352, 357 (7th Cir. 2003) (citing United States v. Salgado, 807 F.2d 603, 607 (7th Cir. 1986)). But a discovery is not "inevitable" simply because police possessed probable cause; rather, probable cause plus a chain of events that would have led to that discovery is necessary. Brown, 328 F.3d at 357 (quoting United States v. Brown, 64 F.3d 1083, 1085 (7th Cir. 1995)).

In the present case, the deputies obtained a warrant to search not only for firearms but also for controlled substances. Although the court has not been informed where the guns were found, it is fair to assume that anywhere one could reasonably look for controlled substances would necessarily include any place a firearm could be stored. And in any event, the defendant

does not dispute that a lawful search for controlled substances would have discovered the firearms. (Docket No. 15 at 15-16.) Rather, the defendant contends only that the search warrant failed to establish probable cause to search the residence for controlled substances. (Docket No. 15 at 15-16.)

The court disagrees with the defendant's contention that the statement of Franck's family members that he had been taking prescription medications that "may or may not have been prescribed to him" made it essentially a "coin flip" whether or not Franck was violating any law. Read alongside the statement of Franck's mother in the following sentence that earlier that day Franck "took 2 Oxycodone 10 mg tablets and 2 Buspirone tablets which are prescribed to her," (Docket No. 9-1 at 6), strongly suggests that Franck did not have a prescription for the drugs he was using. If he had a valid prescription, he presumably would have no need to resort to taking his mother's pills.

The court also disagrees with the defendant's contention that the use of the words "took" or "taking" could be understood equally to mean ingesting a pill or merely assuming possession of a pill. Again, the meaning becomes clear when the two relevant sentences are read together. In the first sentence, by virtue of the fact of the acknowledgment that the drugs may have been prescribed for him, "been taking" could be reasonably understood to mean only ingesting. When "take" is used in the sense of assuming physical possession, one does not commonly "take" something that belongs to him; thus ingesting is the only reasonable denotation in this context. When the same verb is used in the second sentence, it is reasonable to assume it has the same meaning, and thus entirely reasonable to read that sentence as indicating that earlier that day, Franck had ingested pills belonging to his mother. To read these sentences otherwise would offend the general notion that an affidavit submitted in support of a search warrant must be read

in a common sense manner rather than in an arcane and hyper-technical manner. Gates, 462 U.S. at 236.

But this distinction is of little consequence. First, a fact does need not be more likely true than not to establish probable cause. United States v. Carmel, 548 F.3d 571, 576 (7th Cir. 2008) (citing Woods v. City of Chicago, 234 F.3d 979, 996 (7th Cir. 2000)). So even if it was a true "coin-flip" as to which understanding was correct, this would not necessarily mean that probable cause did not exist. Second, either denotation of "took" necessarily requires physical possession, and it is physical possession, not ingestion, that is the offense proscribed by Wisconsin statute. Wis. Stat. § 961.41.

Isolated evidence of one-time drug use does not necessarily establish probable cause to search a residence for additional evidence, United States v. Bennett, 2008 U.S. Dist. LEXIS 110965, 10-12 (E.D. Wis. Sept. 22, 2008), but the additional statements of Franck's family members indicate that his prescription drug use has been ongoing. There is also the fact that within a bottle of Tramadol found at the residence, "there were other tablets in the bottle which did not match the prescription label." (Docket No. 9-1 at 6.) While by itself this is not unlawful in Wisconsin, see State v. Slivoski, 1992 Wisc. App. LEXIS 1190 (unpublished), when viewed alongside all other facts contained in the affidavit, the comingling of pills and/or storage of a drug in a prescription bottle other than its original prescription bottle further supports the inference that Franck unlawfully possessed prescription drugs.

V. **CONCLUSION**

For the reasons set forth above, the court shall recommend that the defendant's motion to suppress, (Docket No. 8), be denied. Although a reasonable judicial officer would be misled by the reference in the affidavit to the injunction with a firearm restriction in the warrant, the

10

affidavit would nonetheless establish probable cause to search the residence for firearms if this portion was excised. The affidavit established probable cause to believe that Franck possessed a firearm, that such possession was unlawful by virtue of his conviction of a misdemeanor crime of domestic violence, and evidence of this crime was likely to be found in the residence. Alternatively, the affidavit established probable cause to believe that Franck unlawfully possessed prescription medication. A search for evidence of this offense would have inevitably discovery the firearms.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to suppress, (Docket No. 8,) be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 30th day of September, 2013.

/s/ Aaron E. Goodstein
Aaron E. Goodstein
United States Magistrate Judge